**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PRECIOUS CAIN,**

|  |  |
|---|---|
| **Plaintiff,** | **8:20-cv-232** |
|  | **(GLS/DJS)** |

v.

**NORTH COUNTRY COMMUNITY**
**COLLEGE et al.,**

                        **Defendants.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|

**FOR THE PLAINTIFF:**
Finn Law Offices                    RYAN M. FINN, ESQ.
P.O. Box 66509
Albany, NY 12206

**FOR THE DEFENDANTS:**
*North Country Community*
*College & Tara Smith*
Sugarman Law Firm LLP              PAUL V. MULLIN, ESQ.
211 West Jefferson Street           JENNA WHITE KLUCSIK, ESQ.
Syracuse, NY 13202

*Victoria Barber*
HON. LETITIA JAMES                 KASEY K. HILDONEN
New York State Attorney General     MARK G. MITCHELL
The Capitol                         Assistant Attorneys General
Albany, NY 12224

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I.  Introduction

Plaintiff Precious Cain commenced this action against defendant North Country Community College (NCCC), Victoria Barber, and Tara Smith, pursuant to Title VI,[1] 42 U.S.C. §§ 1981 and 1983, and New York State law.  (Compl., Dkt. No. 1.)  Pending are defendants' motions to dismiss.  (Dkt. Nos. 12, 15.)  For the following reasons, the motions are granted.

### II.  Background

#### A.    Facts[2]

Cain, an African American female, was employed by NCCC as an adjunct professor in August 2018.  (Compl. ¶¶ 1, 15.)  As an adjunct professor, she worked in several prisons as part of a "Second Chance Pell Program," which allows eligible inmates to earn a two-year degree.  (*Id.* ¶ 16.)

In January 2019, Cain "applied for a full-time position as a business

---

[1]  *See* 42 U.S.C. §§ 2000d-2000d-7.

[2]  The facts are drawn from Cain's complaint, (Dkt. No. 1), and presented in the light most favorable to her.

instructor" for NCCC, which "would have been a promotion for [her]."  (*Id.* ¶ 20.)  Her supervisor in the business department encouraged her to do so. (*Id.*)  "Despite having superior qualifications for the position, [Cain] was not even granted an interview; was consistently misled about the status of the selection process; and, ultimately in May 2019 [she] was passed over by two white males who obtained the position of business instructor despite having inferior qualifications."  (*Id.* ¶ 21.)  Cain "was not happy" about this decision and was "especially disturbed by the fact that the selection committee did not even bother to interview her for the position for which she was qualified."  (*Id.* ¶ 22.)

In June 2019, Cain "was wrongfully accused of theft and sabotaging a co-worker's desk."  (*Id.* ¶ 23.)  "Because of the workplace stress, [Cain] had developed a hand tremor."  (*Id.* ¶ 24.)  One morning, while Cain was entering the Franklin Correctional Facility, an employee of the prison noticed her hand tremor, and called Barber, Deputy Superintendent for Programs at Franklin Correctional Facility, and "informed her that [Cain] was acting nervous and suspicious."  (*Id.* ¶¶ 4, 25-26.)  Barber, who "was in a position of power and was trying to intimidate" Cain, "wrongfully accused [her] of being under the influence of alcohol"; "made up this false

3

accusation about suspicion of alcohol use"; and "leaned into [Cain's] face, yelling at her and asking her if she felt nervous."  (*Id.* ¶¶ 27-28, 33.)

Cain "informed her supervisor that it was concerning and alarming that . . . Barber had acted so aggressively and that she made up this false allegation," and she "raised several concerns about the mistreatment and informed her supervisors that she believed that the decision was racially motivated."  (*Id.* ¶¶ 29-30.)  Cain's supervisor said she "understood [Cain's] concerns and that she completely understood if [Cain] did not want to return to the [p]rison," (*id.* ¶ 31), and the "Chair of the Business Department . . . said he [also] completely understood [Cain] not wanting to return to the prisons," (*id.* ¶ 41).

"Despite the issue of race discrimination being raised, there was no investigation, no remedial action taken, and no opportunity for [Cain] to be further heard regarding her mistreatment."  (*Id.* ¶ 32.)  As "the only employee at [NCCC], or in the prison, that was a person of color, . . . she felt targeted and unsafe."  (*Id.* ¶ 34.)  In the spring of 2019, Cain "was falsely accused of theft and trashing a coworker's classroom/desk."  (*Id.* ¶ 36.)  Cain "felt the false accusations were racially motivated and that [Barber] had a vendetta."  (*Id.* ¶ 37.)

Cain's last day of work was at the end of June 2019, because she "was constructively discharged after her working conditions became intolerable," and there were no other jobs available, nor were any offered to her.  (*Id.* ¶¶ 17, 43.)  She "notified her supervisors of the decision to resign her position on July 4th and 5th, 2019."  (*Id.* ¶ 18.)

"[NCCC] policy requires a prompt and thorough investigation whenever an issue of racial discrimination is suspected or complained about," but, NCCC "failed to investigate even though [Cain] made clear she felt unsafe as she was the only African American and was singled out and targeted," which "should have triggered an investigation by [NCCC]."  (*Id*. ¶ 45.)  Smith, the Director of Human Resources at NCCC, "was aware of the allegations and refused to investigate even though it is her duty and responsibility."  (*Id.* ¶¶ 6, 46.)  In addition, Cain alleges that NCCC, through Smith, "provided false information and argument to the New York State Unemployment Department by claiming that [Cain] quit her job without good reason, and that she had declined other employment opportunities."  (*Id.* ¶ 47.)

## B.   Procedural History

Cain brings the following causes of action: (1) a violation of Title VI

against NCCC; (2) an employment discrimination claim pursuant to 42

U.S.C. §§ 1981 and 1983 against all defendants; (3) a retaliation claim

pursuant to 42 U.S.C. §§ 1981 and 1983 against all defendants; (4) a

hostile work environment claim pursuant to 42 U.S.C. §§ 1981 and 1983

against all defendants; and (5) a violation of the New York Human Rights

Law (NYHRL)[3] against all defendants.  (Compl. ¶¶ 48-79.)  Barber moves

to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), (Dkt. No. 12), and NCCC

and Smith move to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6),

(Dkt. No. 15).

## V.  Standards of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled

and will not be repeated here.  For a full discussion of the governing

standard, the court refers the parties to its prior decision in *Ellis v. Cohen &*

*Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

Under Rule 12(b)(1), the standard of review is similar to that of Rule

12(b)(6), except that the court "may refer to evidence outside the pleadings

. . . [and a] plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  *Makarova v.*

---

[3]  *See* N.Y. Exec. Law § 296.

*United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citations omitted).

## IV.  Discussion

As an initial matter, Cain concedes dismissal of her § 1981 claims.

(Dkt. No. 18 at 154.)  Cain has also withdrawn her Title VI claim against

NCCC, as well as her purported constructive discharge claim and her

request for punitive damages.  (*Id.*)  Thus, Cain's remaining claims are her

employment discrimination, hostile work environment, and retaliation

claims, all pursuant to § 1983, as well as her claim alleging a violation of

NYHRL against all defendants.  (Compl. ¶¶ 58-79.)

## A.    Employment Discrimination

Defendants argue that Cain's employment discrimination claim is

subject to dismissal because she fails to plausibly allege that she suffered

an adverse employment action, or that any alleged mistreatment was

racially motivated.[4]  (Dkt. No. 12, Attach. 2 at 7-9; Dkt. No. 15, Attach. 4

at 3-8.)  The court agrees.

---

[4] NCCC asserts that it cannot be held liable under § 1983 because Cain has failed to plausibly allege *Monell* liability against it and Smith, and because Cain does not allege that Smith had any personal involvement in the facts giving rise to her claims. (Dkt. No. 15, Attach. 4 at 12-16.)  Barber argues that the allegations against her must be dismissed because she is entitled to qualified immunity. (Dkt. No. 12, Attach. 2 at 18-19.)  As explained below, because the complaint fails to state a claim pursuant to § 1983, the court need not reach these issues.

To establish a claim of employment discrimination under Section

1983, a plaintiff must allege that: "(1) [s]he is a member of a protected

class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered

an adverse employment action; and (4) the adverse action took place

under circumstances giving rise to the inference of discrimination."  *Ruiz v.*

*Cty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010) (noting that

discrimination claims brought pursuant to Title VII and Section 1983 are

analyzed under the burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Patterson v. Cnty.*

*of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  To satisfy the *prima facie*

requirements of a discrimination claim in the employment context, a plaintiff

need not provide "substantial evidence of discriminatory intent" at the initial

stage of the litigation, but still has the "minimal burden of showing facts

suggesting an inference of discriminatory motivation."  *Littlejohn v. City of*

*New York*, 795 F.3d 297, 311 (2d Cir. 2015) (citations omitted).  "Therefore,

to avoid dismissal, a plaintiff must 'allege facts showing a plausible

inference of discrimination' because of a protected characteristic."

*Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14-CV-4534, 2014 WL

6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (quoting *De La Pena v. Metro. Life*

*Ins. Co.*, 552 F. App'x 98, 98-100 (2d Cir. 2014)).  "Naked assertions of

race discrimination . . . without any specific factual allegation of a causal

link between the defendants' conduct and the plaintiff's protected

characteristic are too conclusory to withstand a motion to dismiss."  *Id.*

(citation and alterations omitted).

Here, Cain fails to allege facts plausibly suggesting that she suffered

an adverse action.  Indeed, it is unclear what, if any, adverse action Cain

suffered.  Cain argues that "the false claims raised against [her] including

her separation of employment and her employer providing false information

to Unemployment can constitute adverse action, since the damage to [her]

reputation would plausibly have a tangible negative effect on [her] future

job prospects."  (Pl.'s Mem. of Law at 16-17.)[5]  She further contends that

"such acts by NCCC and Smith plausibly alleges 'but for' causation

because the chilling effect of the actions would likely dissuade a

reasonable employee from making a complaint."  (*Id.*)

Notably, Cain's own allegations state that she made a "decision to

---

[5]  Citations to "Pl.'s Mem. of Law" are to Cain's responsive memorandum of law, which
is contained within a voluminous filing.  (Dkt. No. 18 at 144-62.)  Along with her opposition to
defendants' motions, Cain also included the transcript from her hearing before the New York
State Unemployment Insurance Appeal Board.  (*Id.* at 3-130.)  Pursuant to Fed. R. Civ.
P. 12(d), the court has excluded from its consideration the transcript of the proceeding, which
is outside of the pleadings.

quit," and she "stopped teaching with the consent of her supervisor and department chair." (Compl. ¶¶ 19, 47.) And, "[a]lthough a constructive discharge can constitute an adverse action," *Ryle v. Rehrig Pac. Co.*, No. 1:19-CV-1478, 2020 WL 6196144, at *10 (N.D.N.Y. Oct. 22, 2020), Cain has conceded that her constructive discharge claim has no merit, (Dkt. No. 18 at 154).

Further, Cain has not alleged any type of demotion, loss of benefits, change in her job duties, or that she was facing any reasonable threat of termination. (*See generally* Compl.) Nor does she allege any specific reason for her decision to leave her job other than the purported false accusations made against her by Barber, the "workplace stress," and NCCC's alleged failure to address her complaints. (*Id.* ¶¶ 24, 27-28, 45, 47); *see Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (explaining that examples of adverse actions "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." (internal quotation marks and citation omitted)); *Ryle*, 2020 WL 6196144, at *10. And, Cain's argument that "the damage to [her]

reputation would plausibly have a tangible negative effect on [her] future job prospects," (Dkt. No. 18 at 160-61), is entirely speculative.

To the extent Cain alleges that she "was passed over [for a promotion] by two white males who obtained the position of business instructor despite having inferior qualifications," and that she was not interviewed "for the position for which she was qualified," (Compl. ¶¶ 21-22), such conclusory allegations are insufficient to support her claim. Indeed, Cain provides no specificity as to the alleged differences in her qualifications as compared to the "two white males," nor do her allegations support an inference of discriminatory intent. *See Pertillar v. AAA W. & Cent. N.Y.*, No. 5:16-cv-238, 2018 WL 583115, at *5 (N.D.N.Y. Jan. 26, 2018) ("Although the amended complaint generally alleges that [the plaintiff] was passed over for a promotion while a white individual, who was allegedly less qualified, was promoted, the amended complaint fails to provide meaningful specifics of the alleged difference in qualifications, let alone discriminatory intent. Without any specificity as to the qualifications considered for each position and without any reference to specific statements or individual circumstances that suggest discriminatory treatment, [the plaintiff's] allegations do not support an inference that [the

defendant] acted with a discriminatory purpose." (citations omitted)).

Finally, to the extent Cain argues that defendants' failure to investigate constitutes an adverse action, (Pl.'s Mem. of Law at 16-17), "the Second Circuit has held that a complete 'failure to investigate a complaint of discrimination cannot be considered an adverse employment action.'" *Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 14-CV-6647, 2015 WL 4605684, at *17 (S.D.N.Y. July 31, 2015) (quoting *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010)); *see Brooks v. City of Utica*, 275 F. Supp. 3d 370, 379 (N.D.N.Y. 2017) ("[I]f a failure to investigate does not qualify as an adverse employment action under Title VII's broader definition of the term for retaliation claims, such failure plainly does not qualify under the stricter definition for discrimination claims." (citation omitted)).

Even if Cain has alleged facts plausibly suggesting that she suffered an adverse action, there are no allegations to support a plausible inference that any of the defendants acted with a discriminatory purpose.  Cain's allegations that she "felt targeted and unsafe," (Compl. ¶ 34), and "felt the false accusations [against her] were racially motivated and that [Barber] had a vendetta," (*id.* ¶ 37), do not suffice.  *See Brodt v. City of New York*, 4

F. Supp. 3d 562, 568 (S.D.N.Y. 2014) ("In reviewing the sufficiency of a

complaint's allegations, a plaintiff's 'feelings and perceptions of being

discriminated against are not evidence of discrimination.'" (quoting

*Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)); *Williams v.*

*Wellness Medical Care, P.C.*, No. 11-CV-5566, 2013 WL 5420985, at *6

(S.D.N.Y. Sept. 27, 2013) ("[W]ithout sufficient facts, even the most

sincerely held beliefs [of discrimination] do not comprise a sufficient basis

for withstanding a 12(b)(6) attack." (citations omitted)).  Indeed, Cain does

not allege any facts connecting her claims of unfair treatment to her race.

*See Sanders-Peay*, 2014 WL 6473507, at *3 (dismissing employment

discrimination claim where the plaintiff's claim "rest[ed] solely on personal

disputes" and allegations that she "was treated unfairly because of [the

defendant's] personal vendetta against [her]." (internal quotation marks and

citations omitted)).

For all of these reasons, defendants' motions to dismiss Cain's

employment discrimination claim are granted, and the claim is dismissed.

## B.   Retaliation

To state a § 1983 retaliation claim, "the plaintiff must plausibly allege

that: (1) defendants acted under the color of state law, (2) defendants took

adverse employment action against h[er], (3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead Union Free Sch. Dist*., 801 F.3d 72, 91 (2d Cir. 2015).

As explained above, because Cain has not alleged facts plausibly suggesting that she suffered an adverse action, her retaliation claim also fails.

And, even assuming that Cain suffered an adverse action, there are no allegations to support a plausible inference that the "adverse action would not have occurred in the absence of [a] retaliatory motive." *Vega*, 801 F.3d at 90-91 ("[B]ut-for causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." (internal quotation marks and citation omitted)).

Accordingly, defendants' motions to dismiss Cain's retaliation claim are granted, and the claim is dismissed.

## C.    Hostile Work Environment

Defendants argue that Cain fails to state a hostile work environment claim because her allegations do not rise to the requisite level, nor does she allege any facts that would "suggest that any conduct by any person

was motivated, in whole or in part, by her race." (Dkt. No. 12, Attach. 2 at 14-17; Dkt. No. 15, Attach. 4 at 8-9.)  The court agrees.

To establish a § 1983 hostile work environment claim, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-21 (internal quotation marks and citation omitted).  The workplace environment must be objectively "severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014) (citations omitted).  And, when asserting a claim for hostile work environment based on discriminatory animus, a plaintiff must also "adequately plead a causal connection between his protected status and the alleged hostile work environment."  *Trujillo v. City of New York*, No. 14 Civ. 8501, 2016 WL 10703308, at *14 (S.D.N.Y. Mar. 29, 2016), *aff'd*, 696 F. App'x 560 (2d Cir. 2017) (citations omitted).

Cain has failed to state a claim for a hostile work environment.  She argues that she has raised a plausible inference of a hostile work

15

environment for the following reasons: there was "more favorable treatment of employees not in the protected group, coupled with the circumstances surrounding [her] suspension"; there were "false allegations made against [her] on two different occasions"; her "altercation" with Barber was of a "threatening nature"; defendants "fail[ed] to investigate"; and there were "false statements made to Unemployment after her separation from employment."  (Pl.'s Mem. of Law at 14.)  However, a review of the complaint reveals only vague and conclusory allegations that fail to support a plausible inference of a hostile work environment.  *See Trujillo*, 2016 WL 10703308, at *14 ("[B]ald statements—without any supporting facts—are too conclusory to permit an inference of discriminatory animus." (citations omitted)).

Accordingly, defendants' motions to dismiss Cain's hostile work environment claim are granted, and the claim is dismissed.

**D.   NYHRL**

Because all of Cain's federal claims are dismissed, the court declines to exercise supplemental jurisdiction over her NYHRL claim.  *See Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006) ("It is well settled that where, as here, the federal claims are

eliminated in the early stages of litigation, courts should generally decline

to exercise pendent jurisdiction over remaining state law claims." (citations

omitted)).  Accordingly, Cain's NYHRL claim is dismissed as well.

### V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Barber's motion to dismiss (Dkt. No. 12) is

**GRANTED**; and it is further

**ORDERED** that NCCC's and Smith's motion to dismiss (Dkt. No. 15)

is **GRANTED**; and it is further

**ORDERED** that Cain's complaint (Dkt. No. 1) is **DISMISSED**; and it is

further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

December 8, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge